# TABLE OF CONTENTS

1. INTRODUCTION

2. JURISDICTION AND VENUE

3. PARTIES

4. FACTUAL ALLEGATIONS

a. Confiscation of Plaintiff's Personal Computer

b. Suppression of Testimony Regarding $3.7 Billion Offer

c. Alleged $1 Million Truist Bank Bribe and Misuse of DIP Financing

d. Coerced Social Media Posts and Suppression of Free Speech

5. CLAIMS FOR RELIEF

a. First Claim: Violation of the First Amendment

b. Second Claim: Violation of the Fourth and Fifth Amendments

c. Third Claim: Violation of RICO (18 U.S.C. § 1962)

d. Violation of Judicial Cannons

6. PRAYER FOR RELIEF

7. JURY DEMAND



UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **JOHN OWOC**<br><br>**Plaintiff,**<br><br>vs.<br><br>**HON. PETER D. RUSSIN, in his individual capacity,**<br><br>**Defendant** | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES**<br><br>JURY TRIAL DEMANDED |

**COMES NOW**, Plaintiff John Owoc, proceeding pro se (hereinafter "Plaintiff", and hereby files this Complaint against Defendant, Hon. Peter D. Russin for Declaratory Relief, Injunctive Relief and Damages for violations of the U.S. Constitution. In support of this Complaint, Plaintiff states as follows:

## INTRODUCTION

1. Plaintiff, proceeding pro se, files this action for Declaratory Relief, Injunctive Relief, and Damages to redress violations of his constitutional and statutory rights arising from Defendant's unlawful actions. This Complaint asserts claims under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution, as well as the Racketeer Influenced

and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and other applicable federal and state laws.

2. Plaintiff seeks a declaration that Defendant's actions violated his rights, an injunction to prevent further harm, compensatory and punitive damages for the substantial harm caused by Defendant's misconduct, and the immediate return of his personal property unlawfully seized and retained. Plaintiff also seeks the disbarment and removal of Defendant from the judiciary to protect the public from further abuse.

3. Judicial immunity protects judges from civil liability for acts performed within their judicial capacity. However, this immunity does not extend to actions taken outside the scope of judicial functions or those performed in a clear absence of jurisdiction. See *Forrester v. White*, 484 U.S. 219 (1988); *Stump v. Sparkman*, 435 U.S. 349 (1978). Defendant's conduct falls outside these protections.

4. Defendant engaged in non-judicial, coercive actions, including directing Plaintiff to post fraudulent and misleading content on his personal social media accounts, exploiting Plaintiff's likeness and image, confiscating Plaintiff's personal computer, suppressing evidence regarding a $3.7 billion acquisition offer for Bang Energy, and facilitating alleged bribery and misconduct in the bankruptcy proceedings.

5. Plaintiff asserts that these actions were administrative, retaliatory, and intended to serve private, fraudulent purposes, lacking any connection to judicial decision-making. See *Pulliam v. Allen*, 466 U.S. 522 (1984) (judicial immunity does not bar injunctive relief or declaratory judgments).

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights violations), and 42 U.S.C. § 1983. The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, also provides jurisdiction for declaratory relief.

7. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b), as the events giving rise to the claims occurred within this judicial district.

## PARTIES

8. Plaintiff John Owoc is a resident of Florida and a business owner, former CEO, 100% shareholder, and Chairman of Vital Pharmaceuticals, Inc. (Bang Energy).

9. Defendant Hon. Peter D. Russin is a federal bankruptcy judge serving in the Southern District of Florida. He is sued in both his official and individual capacities for actions taken outside the scope of lawful judicial authority.

## FACTUAL ALLEGATIONS

### Confiscation of Plaintiff's Personal Computer

10. In June 2023, Defendant Russin ordered the confiscation of Plaintiff's personal computer without due process, violating Plaintiff's Fourth and Fifth Amendment rights. See *United States v. Kahn*, 415 U.S. 143 (1974) (emphasizing protections against unlawful searches and seizures).

11. The computer contained protected health information (PHI), attorney-client privileged communications, personal documents, and sensitive business data. Defendant authorized third-party access to the confiscated computer, further violating Plaintiff's constitutional rights and HIPAA.

12. Despite repeated demands for its return, Defendant unlawfully retained Plaintiff's computer for over two years, constituting grand theft under Florida Statute § 812.014.

**Suppression of Testimony Regarding $3.7 Billion Offer**

13. During Plaintiff's sworn testimony, Defendant suppressed critical evidence regarding a $3.7 billion offer from Keurig Dr Pepper (KDP) to purchase Bang Energy, in violation of Plaintiff's due process rights under the Fifth Amendment. See *Elrod v. Burns*, 427 U.S. 347 (1976) (protecting against retaliation for exercising constitutional rights).

14. Defendant cleared the courtroom, cut off online access, and excluded interested parties, obstructing creditors' rights to hear this testimony.

15. Defendant subsequently approved the sale of Bang Energy to Monster Energy for $362 million, a fraction of its value, leaving creditors with only a few cents on the dollar.

**Alleged $1 Million Truist Bank Bribe and Misuse of DIP Financing**

16. It is alleged that Truist Bank paid a $1 million bribe disguised as an "administration fee" to a bidder in order to rig the bankruptcy bidding process.

17. Instead of utilizing $100 million in debtor-in-possession (DIP) financing to maximize value and restructure Vital Pharmaceuticals, $67 million was allocated to legal fees benefiting law firms adverse to Plaintiff, while only $33 million was used to support operations.

18. Plaintiff paid Truist Bank $122 million from the sale of his two personally owned real estate properties during the bankruptcy proceedings. Despite this, Defendant allowed the depletion of approximately $29 million in super-priority funds by Lowenstein Sandler for exorbitant legal fees, preventing Plaintiff from settling with creditors. See *Dennis v. Sparks*, 449 U.S. 24 (1980) (holding that judges can be implicated in civil RICO claims).

19. Defendant openly celebrated in the courtroom as Monster Energy acquired Bang Energy for a fraction of its value, resulting in significant financial harm to Plaintiff and the loss of over 1,200 jobs.

**Coerced Social Media Posts and Suppression of Free Speech**

20. Defendant compelled Plaintiff to post fraudulent content on his personal social media accounts, misleading his 2.1 million followers, violating his First Amendment rights. See *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

21. When Plaintiff attempted to clarify that he was not the author of these posts, Defendant imposed excessive sanctions and later shut down Plaintiff's social media accounts.

22. These actions constitute a retaliatory abuse of judicial power and suppression of Plaintiff's free speech.

## CLAIMS FOR RELIEF

**First Claim for Relief: Violation of the First Amendment**

23. Defendant unlawfully suppressed Plaintiff's freedom of speech and compelled him to disseminate fraudulent messages on his social media accounts.

24. Defendant retaliated against Plaintiff for exposing corruption within the South Florida bankruptcy community.

25. These actions were outside the scope of judicial functions and constitute a clear violation of Plaintiff's First Amendment rights.

**Second Claim for Relief: Violation of the Fourth and Fifth Amendments**

26. Defendant's confiscation and retention of Plaintiff's computer violated his constitutional rights to be free from unreasonable searches and seizures and his right to due process.

27. The prolonged retention of the computer deprived Plaintiff of access to essential personal, medical, and business documents, further compounding the harm.

**Third Claim for Relief: Violation of RICO (18 U.S.C. § 1962)**

28. Defendant's actions were part of a broader scheme involving high-ranking law firms, banks, and consultants to suppress competition, diminish creditor recoveries, and enrich select parties.

29. Plaintiff suffered significant financial harm as a result of this alleged racketeering activity, which undermined the integrity of the bankruptcy process.

**Violations of Judicial Cannons**

**Canon 1: Upholding the Integrity and Independence of the Judiciary**

30. Failure to Ensure Judicial Integrity: Defendant failed to uphold the judiciary's integrity by consistently ruling against Plaintiff in every motion and decision throughout the bankruptcy proceedings. This pattern of rulings, combined with the lack of impartiality demonstrated in court, reflects a significant departure from the standards of judicial integrity.

31. Systematic Denial of Plaintiff's Rights: Defendant's inability to identify a single instance where he ruled in favor of Plaintiff during two separate court confrontations with Mr. Owoc illustrates a profound lack of fairness and impartiality. This continuous adverse treatment undermines the integrity of the judiciary and its role in providing equitable justice.

**Canon 2: Avoiding Impropriety and the Appearance of Impropriety in All Activities**

32. Appearance of Extreme Bias: Defendant's consistent rulings against Plaintiff created an overwhelming appearance of bias and impropriety. When directly confronted by Plaintiff in open court, Defendant was unable to name a single instance where he ruled in Plaintiff's favor. This public acknowledgment of bias erodes public confidence in the judiciary's impartiality.

33. Allowing Celebratory Behavior in Courtroom: Defendant permitted celebratory behavior by opposing parties following the undervalued sale of Bang Energy. This improper conduct further demonstrates the appearance of impropriety and partiality, as it suggested Defendant's alignment with opposing parties' interests.

34. Use of Emergency Motions as a Weapon: Defendant allowed the weaponization of emergency motions to overwhelm and destabilize Plaintiff's defense. These motions, lacking the urgency required under judicial norms, were used strategically to create procedural advantages for opposing parties, reinforcing the appearance of impropriety.

**Canon 3: Performing Judicial Duties Impartially, Competently, and Diligently**

35. Demonstrated Partiality: Defendant consistently ruled against Plaintiff in every instance throughout the bankruptcy case, including key motions regarding asset protection, the seizure of personal property, and the approval of a substantially undervalued sale of Bang Energy. This pattern reflects an unmistakable bias and failure to perform judicial duties impartially.

36. Failure to Provide Due Process: Defendant ordered the unlawful seizure of Plaintiff's personal, which contained sensitive data, and retained it for over two years without justification. This act demonstrated a lack of diligence and impartiality in protecting Plaintiff's rights.

37. Suppression of Evidence: Defendant suppressed critical testimony regarding a $3.7 billion offer for Bang Energy by clearing the courtroom and cutting off public access during Plaintiff's sworn testimony. This action directly impaired Plaintiff's ability to present evidence and protect his interests.

38. Hostility Toward Plaintiff and Counsel: Defendant displayed aggressive questioning and hostile behavior toward Plaintiff and his legal representatives, creating an

environment of intimidation. This behavior violated the duty to treat all parties with dignity, respect, and fairness.

**Canon 4: Avoiding External Influences on Judicial Conduct**

39. Improper Alignment with Opposing Parties: Defendant's rulings and courtroom behavior suggested alignment with opposing parties, including Truist Bank, Monster Energy, and law firms adverse to Plaintiff. The approval of excessive legal fees from DIP financing and the undervalued sale of Bang Energy reinforced the appearance that Defendant was influenced by external interests.

40. Failure to Mitigate Outside Influence: Defendant's actions allowed external parties, including Jordi Guso and law firms, to interfere with Plaintiff's legal representation. This interference led to the resignation of multiple attorneys, depriving Plaintiff of competent legal counsel.

**Canon 5: Avoiding Conflicts of Interest**

41. Conflict of Interest in Legal Representation: Defendant permitted actions by Jordi Guso and other parties that interfered with Plaintiff's legal representation, contributing to a pattern of attorney resignations. This created a direct conflict of interest and undermined Plaintiff's ability to defend himself effectively.

42. Refusal to Recuse: Despite public confrontations and evidence of bias, Defendant refused to recuse himself, exacerbating the appearance of partiality and conflicts of interest.

**Canon 6: Maintaining Professionalism and Dignity**

43. Lack of Professionalism in Courtroom Conduct: Defendant permitted celebratory actions by opposing parties following the undervalued sale of Bang Energy, failing to maintain the dignity and decorum expected in judicial proceedings.

44. Disrespect Toward Plaintiff: Defendant demonstrated hostility and dismissive behavior toward Plaintiff and his legal representatives, violating the requirement to be patient, dignified, and respectful to all parties involved in the proceedings.

**Summary of Canon Violations**

Canon 1: Defendant failed to uphold the judiciary's integrity by systematically ruling against Plaintiff, suppressing critical evidence, and allowing procedural abuses.

Canon 2: Defendant created an overwhelming appearance of bias through consistent adverse rulings, public acknowledgment of this bias, and improper courtroom conduct.

Canon 3: Defendant demonstrated partiality, incompetence, and a lack of diligence in managing the bankruptcy case, undermining the principles of fairness and justice.

Canon 4: Defendant allowed external influences to shape judicial outcomes, aligning with opposing parties' interests at the expense of Plaintiff's rights.

Canon 5: Defendant failed to address conflicts of interest, permitted interference with Plaintiff's legal representation, and refused to recuse himself despite clear evidence of bias.

Canon 6: Defendant's courtroom behavior lacked professionalism and respect, further eroding public confidence in the judiciary.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests:

1. Declaratory relief that Defendant violated Plaintiff's constitutional and statutory rights.

2. Injunctive relief prohibiting further judicial misconduct.

3. Compensatory and punitive damages in an amount to be determined at trial.

4. Disbarment and removal of Defendant from the judiciary to protect the public from further abuse.

5. The immediate return of Plaintiff's confiscated property.

6. Any other relief deemed just and proper by this Court.

## JURY DEMAND

**Plaintiff demands a trial by jury on all issues so triable.**

Respectfully submitted this 24th day of January 2025.

_____
JOHN H. OWOC
3052 N. Atlantic Blvd,
Fort Lauderdale, FL 33308
*Pro Se Plaintiff*
Email: jackowoc.ceo@gmail.com