UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:25-cv-60138-LEIBOWITZ

**JOHN OWOC,**
    *Plaintiff*,

v.

**THE HON. PETER D. RUSSIN,**
    *Defendant.*
_____/

## ORDER DISMISSING COMPLAINT WITH PREJUDICE

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss the Amended Complaint with Prejudice [ECF No. 16] (the "Motion"), filed on June 9, 2025. The Motion is fully briefed and ripe for resolution. [*See* ECF Nos. 19, 23]. Upon due consideration of the Motion, the parties' papers, and the governing law, the Motion is GRANTED for the reasons discussed below.

### I.    PROCEDURAL BACKGROUND

On January 24, 2025, *pro se* Plaintiff, John Owoc ("Owoc"), filed a complaint, alleging various constitutional violations purportedly committed by Defendant United States Bankruptcy Judge Peter D. Russin ("Judge Russin") while adjudicating Owoc's bankruptcy case. [ECF No. 1]. Specifically, Owoc alleged as follows: (1) Judge Russin confiscated Owoc's personal computer in violation of the Fourth and Fifth Amendments to the United States Constitution [ECF No. 1 ¶¶ 10–12]; (2) Judge Russin violated Owoc's due process rights by "suppress[ing] critical evidence" during a bankruptcy hearing [*id.* ¶¶ 13–15]; and (3) Judge Russin violated Owoc's First Amendment rights by "compell[ing]" Owoc "to post fraudulent content on his personal social media accounts" and then by "shut[ting] down Plaintiff's social media accounts" in retaliation for Owoc's protesting the court-ordered posting [*id.* ¶¶ 20–22]. Owoc also purports to assert a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim against Judge Russin for "allow[ing] the depletion of approximately $29 million in super-priority funds by Lowenstein Sandler for exorbitant legal fees, preventing Plaintiff

from settling with creditors." [*Id.* ¶¶ 16–19 (citing *Dennis v. Sparks*, 449 U.S. 24 (1980))]. Finally, Owoc alleged Judge Russin violated Judicial Canons 1 through 6 throughout the bankruptcy proceedings. [ECF No. 1 at 7–10].

On May 6, 2025, Judge Russin moved to dismiss the complaint for lack of jurisdiction and for failure to state a claim upon which relief could be granted. [ECF No. 5]. Owoc timely responded [ECF No. 8], but as Judge Russin replied [ECF No. 10], Owoc filed an Amended Complaint [ECF No. 12]. The Amended Complaint reasserts the counts alleged in the original complaint, and it also attempts to add claims for a "violation of 28 U.S.C. § 1654, Florida Constitution — Article 1, Section 21, Florida Statutes — § 454.18" [*id.* ¶¶ 22–31] and for "defamation *per se*" [*id.* ¶¶ 32–34, 47–57]. For relief, Owoc seeks declaratory and injunctive relief, the immediate return of his "confiscated" property, Judge Russin's "disbarment and removal" from the judiciary, and any other relief deemed just and proper by the Court. [*Id.* at 15–16].

## II.   LEGAL STANDARDS

### A.   Dismissal under Rule 12(b)(2) and Rule 12(b)(5).

A party may move for dismissal under Rule 12(b)(2) for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988) (citations omitted). Personal jurisdiction includes "service of process." *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 925 n.15 (11th Cir. 2003). A party may move for dismissal under Rule 12(b)(5) for insufficient service of process. Fed. R. Civ. P. 12(b)(5). "Service of process is simply the physical means by which [a forum's] jurisdiction is asserted." *Baragona v. Kuwait Gulf Link Transport Co.*, 594 F.3d 852, 854–855 (11th Cir. 2010). "A court obtains personal jurisdiction over the parties when the complaint and summons are properly served on the defendant. Effective service of process is therefore a prerequisite to proceeding further in a case." *Deshommes v. Yellen*, No. 24-60285-CIV, 2025

WL 274374, at *2 (S.D. Fla. Jan. 16, 2025) (citing *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir. 1991)). As with a motion under Rule 12(b)(2), the plaintiff on a Rule 12(b)(5) motion bears the burden of establishing proper service. *In re Trasylol Prods. Liab. Litig.*, Case No. 08-CV-81212, 2011 WL 5529934, at *4 (S.D. Fla. July 21, 2011).

   **B.**  <u>**Dismissal under Rule 12(b)(6) for failure to state a claim**</u>.

  Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that asserts mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. And "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the factual allegations pleaded "must be enough to raise a right to relief above the speculative level." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (brackets in original) (quoting Fed. R. Civ. P. 8(a)(2)). "The Supreme Court has employed a 'two-pronged approach' in

3

applying the foregoing principles: first, a reviewing court should eliminate any allegations in the complaint that are merely legal conclusions; and second, where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Boyd v. Warden, Holman Correctional Facility*, 856 F.3d 853, 864 (11th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 679). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

### III. PLAINTIFF'S ALLEGATIONS

All allegations in the Amended Complaint directed at Judge Russin involve actions taken by Judge Russin when presiding over Owoc's bankruptcy proceedings. [*See generally,* Am. Compl., ECF No. 12]. The actions complained of fall into six main categories: (1) the confiscation of Owoc's personal computer; (2) the exclusion of certain testimony at a bankruptcy hearing; (3) legal fees authorized by the bankruptcy court; (4) court-ordered social media postings and sanctions related thereto; (5) the ban against *pro se* litigant's bringing electronic devices into the courthouse; and (6) negative statements made about Owoc in court records, legal filings, and third-party communications, such as in the media. For clarity and convenience, the Court incorporates the titles for each category of actions set forth in the Amended Complaint and recounts the allegations related as to each category as follows:

A. **"Confiscation of Plaintiff's Personal Computer"**

In June 2023, non-party attorney Alexa Gerbert entered Owoc's private residence and removed his personal computer. [ECF No. 12 ¶ 10]. The computer contained "highly sensitive materials, including privileged legal communications, decades of proprietary research and development data, private financial records, and HIPPA-protected medical information critical to … Owoc's ongoing medical care." [*Id.*]. Owoc repeatedly demanded the return of his computer, to no

4

avail. [*Id.*]. Owoc filed two motions in the bankruptcy court seeking the return of his computer, but Judge Russin "allowed this constitutional violation to persist." [*Id.*]. Owoc asked Judge Russin what evidence had been submitted to support the seizure of his personal computer, and Judge Russin replied, "there was none." [*Id.*]. Owoc further alleges Judge Russin violated his constitutional rights by "authoriz[ing] third-party access to the confiscated computer." [*Id.* ¶ 11].[1]

### B. "Suppression of Testimony Regarding $3.7 Billion Offer"

Owoc provides no specifics as to what "testimony" was "suppressed," the identity of the testifying witness, or even the date or subject of the hearing. Here, Owoc alleges only that: "Defendant cleared the courtroom, cut off online access, and excluded interested parties, obstructing creditors' rights to hear this testimony." [*Id.* ¶ 13].

### C. "Alleged $1 Million Truist Bank Bribe and Misuse of DIP Financing"

The allegations related to this category of complaints against Judge Russin are difficult to decipher. [*See* ECF No. 12 ¶¶ 15–18]. According to Owoc, Judge Russin authorized "$29 million in super-priority funds by Lowenstein Sandler for exorbitant legal fees, preventing Plaintiff from settling with creditors." [*Id.* ¶ 17]. Then, Judge Russin "openly celebrated in the courtroom as Monster Energy acquired Bang Energy for a fraction of its value, resulting in significant financial harm to Plaintiff and the loss of over 1,200 jobs." [*Id.* ¶ 18].

### D. "Coerced Social Media Posts and Suppression of Free Speech"

Owoc complains here that Judge Russin "compelled" him "to post fraudulent content on his personal social media accounts," in violation of his First Amendment rights. [*Id.* ¶ 19]. However, Owoc does not disclose the content of the "compelled" posting, nor does he explain how it was "fraudulent." [*See id.*]. Confusingly, Owoc adds that when he tried to explain to Judge Russin that

---

[1] Owoc also alleges: "Despite repeated demands for its return, [Judge Russin] unlawfully retained [his] computer for over two years, constituting grand theft under Florida Statute § 812.014." [ECF No. 12 ¶ 12].

5

"he was *not* the author of these posts," Judge Russin "imposed excessive sanctions and later confiscated Plaintiff's social media accounts." [*Id.* ¶ 20]. Owoc does not describe the sanctions imposed or explain how they were "excessive." [*See id.*].

### E.     "Violation of 28 U.S.C. § 1654, Florida Constitution — Article I, Section 21, Florida Statutes — §454.18"[2]

Buried within mostly conclusory legal statements unsupported by specific facts are allegations Judge Russin directed court security officers to "target and harass … Owoc, a self-represented litigant, by barring him from bringing necessary electronic devices to the courthouse." [ECF No. 12 ¶ 26]. Owoc complains of "disparate treatment" in that "attorneys from large law firms—representing opposing parties and often operating in clear alliance with the Court—were permitted to retain their devices without interference." [*Id.* ¶ 26]. Owoc maintains his being denied access to his electronic devices in court "depriv[ed] him of fundamental rights and sabotage[ed] his ability to access justice on equal footing with his adversaries." [*Id.* ¶ 30].

### F.     "Defamation"

Finally, Owoc alleges Judge Russin coordinated with "various attorneys, financial consultants, bank employees, and trustees … in a deliberate and sustained campaign of defamation against [him.]" [*Id.* ¶ 32]. "This campaign involved repeated dissemination of false and defamatory statements portraying the Owocs as disloyal to their company, obstructive in the bankruptcy process, litigious troublemakers, dishonest fiduciaries, and even criminals." [*Id.*]. "These statements were asserted as

---

[2]     Owoc improperly fails to separate his counts and instead commingles federal law with Florida constitutional and statutory law. In *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015), the Eleventh Circuit identified four types of shotgun pleadings. The first "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts." *Id.* at 1321. The second is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. The third fails to separate each cause of action into a separate count. *Id.* at 1322–23. The fourth asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. The Amended Complaint is rife with Type-3 shotgun pleading problems.

fact rather than opinion and were made publicly through court records, legal filings, and third-party communications, ensuring their wide dissemination, including through media coverage." [*Id.*]. The unspecified "defamatory remarks directly attacked the Owocs' honesty, mental stability, and professional competence." [*Id.*].

### IV.   DISCUSSION

Judge Russin moves to dismiss the Amended Complaint with prejudice on three grounds. First, Judge Russin contends he enjoys absolute judicial immunity for all actions taken during Owoc's bankruptcy proceedings, barring Owoc's claims against him.  [ECF No. 5 at 5–8].  Second, Judge Russin argues Owoc's federal claims fail because Section 1983 claims (Counts I and II) cannot be asserted against federal officers such as a United States Bankruptcy Judge, and because Owoc's allegations in Count III fall woefully short of meeting RICO's pleading requirements.  [*Id.* at 8–12]. Third, Judge Russin challenges personal jurisdiction and seeks dismissal for ineffective service of process.  [*Id.* at 12–13].

#### A.   <u>Judge Russin enjoys judicial immunity for the acts complained-of</u>.

Judges who are performing judicial acts are entitled to judicial immunity.  *Mireles v. Waco*, 502 U.S. 9, 13 (1991).  A two-part inquiry determines whether judges enjoy judicial immunity: (1) "did the judge deal with the plaintiff in [her] judicial capacity;" and, if yes, (2) did "the judge act[ ] in the 'clear absence of all jurisdiction.'"  *Dykes v. Hosemann*, 776 F.2d 942, 945 (11th Cir. 1985) (*en banc*) (quoting *Stump v. Sparkman*, 435 U.S. 349, 357 (1978)).  A court considers four factors to determine whether a judge is acting within the scope of his judicial capacity:  whether "(1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Murphy v. Stacy*, 809 F. App'x 677, 682 (11th Cir. 2020) (citing *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005)).  As to the second prong of the

inquiry, this Court has concluded that the "absence of all jurisdiction" means "a complete absence of subject matter jurisdiction." *See Dykes,* 776 F.2d at 947.  A judge does not lose immunity "because the action he took was in error," or "was in excess of his authority." *Stump*, 435 U.S. at 356.

In the case at bar, all acts complained of in the Amended Complaint took place during Owoc's bankruptcy proceedings: (1) the confiscation of OWOC's personal computer; (2) the exclusion of certain testimony at a hearing; (3) the authorization of legal fees; (4) court-ordered social media postings and sanctions related thereto; (5) the ban against *pro se* litigant's bringing electronic devices into the courthouse; and (6) negative statements made about Owoc in court records, legal filings, and third-party communications, such as in the media.  Judge Russin acted within his judicial capacity as to each of these six categories.  Each act is a normal judicial function; all of the acts occurred or sprang from actions taken in the courtroom; each act arose as a direct result of the bankruptcy proceedings before Judge Russin; and Judge Russin acted in his official capacity as to all of them.  Furthermore, there is no credible allegation that Judge Russin took any of the complained-of actions "'in the clear absence of all jurisdiction *over the subject matter*.'" *Dykes,* 776 F.2d at 947 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 350, 351 (1871)) (emphasis in original).  Accordingly, this case is due to be DISMISSED WITH PREJUDICE.  *See Bolin v. Story,* 225 F.3d 1234, 1240–42 (11th Cir. 2000) (per curiam) (holding federal judges are absolutely immune from claims for injunctive and declaratory relief); *see also Bryan v. Murphy*, 243 F. Supp. 2d 1375, 1377–82 (N.D. Ga. 2003) (dismissing bankruptcy debtor's case against federal bankruptcy judge with prejudice on judicial immunity grounds).

    **B.**    **The Amended Complaint fails to state a claim for relief.**

Even if Judge Russin were not entitled to judicial immunity, the Amended Complaint fails to state a claim for relief.  The Amended Complaint attempts to assert two counts under 42 U.S.C. § 1983 (Counts I and II) and one count under the RICO statute (Count III).  The final claim (Count

IV) for defamation arises under Florida law. [ECF No. 12 at 9–15]. None of these claims is viable, as discussed below.

    1.    *Owoc cannot sue Judge Russin under Section 1983.*

Although Owoc improperly commingles his alleged federal and state constitutional claims, he attempts to sue Judge Russin for violating his First, Fourth, and Fifth Amendment rights under the U.S. Constitution. [*See* ECF No. 12 ¶¶ 35–44]. One vehicle a plaintiff may use to assert a cause of action for alleged constitutional violations is Section 1983, and Owoc cites that statute in the Amended Complaint. [*See id.* ¶¶ 38, 41, 42].³ Section 1983 provides, in relevant part, as follows:

> Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983 (emphasis added). By its text and its consistent interpretation, Section 1983 provides a cause of action only against state actors—not federal officials. *See West v. Atkins*, 487 U.S. 42, 48–50 (1988); *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017).⁴ Accordingly, Counts I and II must be dismissed.

---

³    Owoc also cites to the Florida Constitution and Section 454.18, Florida Statutes, as support for these same claims [*See* ECF No. 12 ¶¶ 39, 40], rendering the Amended Complaint an impermissible shotgun pleading. *See Weiland,* 792 F.3d at 1322–23.

⁴    Even if Owoc had asserted Counts I and II under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which is the proper vehicle for asserting constitutional violations against federal officers, Owoc's First Amendment claim still fails. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); *Johnson v. Burden*, 781 F. App'x 883, 836 (11th Cir. 2019) ("[T]he Supreme Court has repeatedly confirmed that it has not extended a *Bivens* remedy to First Amendment claims."); *see also Rager v. Augustine*, 760 F. App'x 947, 953 (11th Cir. 2019) ("[I]t is by no means clear that a damages remedy is warranted for a First Amendment retaliation claim like this one."); *cf. Bush v. Lucas*, 462 U.S. 367, 390 (1983) (declining to extend *Bivens* to a First Amendment claim). As for Owoc's Fourth Amendment claim, because his personal computer was seized pursuant to bankruptcy proceedings, Judge Russin enjoys absolute judicial immunity for the alleged "confiscation." Bankruptcy judges are absolutely immune from civil liability for judicial actions within the scope of their jurisdiction. *See Mireles,* 502 U.S. at 11–13 (1991); *Gregory v. United States,* 942 F.2d 1498, 1499–1500 (10th Cir. 1991).

      2.      *Plaintiff fails to state a RICO claim.*

The RICO Act, 18 U.S.C. §§ 1961, *et seq.,* provides civil and criminal liability for persons engaged in "a pattern of racketeering activity." 18 U.S.C. § 1962(a)–(d). Persons injured by reasons of a RICO violation have a civil cause of action under the terms of the Act. *See* 18 U.S.C. § 1964. A private plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff. *Cisneros v. Petland, Inc.,* 972 F.3d 1204, 1211 (11th Cir. 2020) (citation omitted). "If a plaintiff fails to adequately plead any one of these elements, she has failed to state a claim upon which relief may be granted, and her complaint must be dismissed." *Id.* (citing Fed. R. Civ. P. 12(b)(6)).

Owoc's allegations that Judge Russin "allowed the depletion of approximately $29 million in super-priority funds by Lowenstein and Sandler for exorbitant legal fees," and that Judge Russin "openly celebrated in the courtroom as Monster Energy acquired Bang Energy for a fraction of its value" do not come close to plausibly pleading facts to support a RICO claim. First, Owoc failed to allege any RICO enterprise whatsoever,[5] let alone that Judge Russin "operated" a RICO enterprise through a "pattern of racketeering." [*See* ECF No. 12 ¶¶ 15–18]. Moreover, Owoc does not allege any predicate act of racketeering. [*See id.*]. Accordingly, Count III is due to be dismissed.

      3.      *Plaintiff has no defamation claim against Judge Russin.*

In Florida, defamation has the following five elements: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement

---

[5]    A RICO enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

10

must be defamatory. *Jews For Jesus, Inc. v. Rapp,* 997 So.2d 1098, 1106 (Fla. 2008) (citations omitted). In this case, even if Owoc had sufficiently pleaded facts to support a claim for defamation (which he did not), he cannot sue Judge Russin for defamation. As a matter of state law, in Florida, judges have absolute immunity from civil liability even when making knowingly false statements during or related to a judicial proceeding.

> The judge on the bench must be free to administer the law under the protection of the law, independently and freely, without fear of consequences. . . . As in the case of other acts in his judicial capacity, therefore, **the judge is absolutely privileged as to any defamation he may utter, even though he knows it to be false and is motivated by personal ill will toward the plaintiff.**

*Sailboat Key, Inc. v. Gardner,* 378 So.2d 47, 49 (Fla. 3d DCA 1979) (citing W. Prosser, Law of Torts, § 114 at 777–78 (4th ed. 1971) (emphasis added)). Accordingly, Count IV must be dismissed.

### C. Plaintiff's official capacity claims must be dismissed.

Alternatively, Judge Russin argues the Court lacks personal jurisdiction and moves to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5) for insufficient process. [ECF No. 16 at 14–15]. In the Amended Complaint, Owoc sues Judge Russin "in both his official and individual capacities for actions taken outside the scope of lawful judicial authority." [Am. Compl., ECF No. 12 ¶ 9]. However, Owoc served Judge Russin only individually. [*See* ECF No. 4]. Owoc failed to serve the United States (as required by Rule 4(i)(3) of the Federal Rules of Civil Procedure) when suing an officer in his official capacity. Owoc did not serve the U.S. Attorney General or the U.S. Attorney for the Southern District of Florida. [ECF No. 16 at 14–15]. Attempting to cure this service defect, Owoc filed a Notice stating that he is suing Judge Russin in his individual capacity only. [ECF No. 20]. That Notice is not effective to amend the operative complaint. The law is settled that "a complaint may not be amended by briefs in opposition to a motion to dismiss." *McKally v. Perez,* 87 F. Supp. 3d 1310, 1317 (S.D. Fla. 2015) (citing *Huls v. Llabona,* 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (holding that an argument raised for the first time in response to defendant's motion to dismiss,

11

instead of in an amended complaint, was not properly raised before the district court and would not be considered on appeal); *Fleming v. Dowdell,* 434 F. Supp. 1138, 1148 n.9 (M.D. Ala. 2005) (finding dismissal of the Fourth Amendment claim was proper because "[a] complaint may not be amended by briefs in opposition to a motion to dismiss or motion for summary judgment" (alteration added; citations omitted)). Moreover, Owoc cannot amend the Amended Complaint without leave of court or Judge Russin's consent. *See* Fed. R. Civ. P. 15(a).

Therefore, for present purposes, the Court disregards Owoc's improper attempt to amend the Amended Complaint to assert only individual capacity claims against Judge Russin. Because Owoc did not serve Judge Russin in compliance with the Federal Rules of Civil Procedure, the official capacity claims against Judge Russin must be dismissed.

To serve a United States officer or employee in an official capacity, a party must serve the United States and send a copy of the summons and of the complaint by registered or certified mail to the officer or employee. *See* Fed. R. Civ. P. 4(i)(3). To serve the United States, a party must (1) deliver a copy of the summons and the complaint to the United States Attorney for the district where the action is brought; or (2) deliver the copies to an Assistant United States Attorney or clerical employee whom the United States Attorney designates in a writing filed with the court clerk; or (3) send a copy of each by registered or certified mail to the civil-process clerk at the United States Attorney's office; *and* send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C. *See* Fed R. Civ. P. 4(i)(1)(A) and (B).

Owoc essentially concedes he failed to serve a copy of the summons and complaint upon the U.S. Attorney for the Southern District of Florida, and he failed to serve a copy of the summons and complaint upon the U.S. Attorney General. [*See* ECF No. 20]. As a result, Owoc's service of process of his official capacity claims against Judge Russin was insufficient. "Failure to properly serve the United States deprives the court of personal jurisdiction." *Thompson v. Internal Revenue Service,* 23 F.

Supp. 2d 923, 924 (N.D. Ind. 1998) (citing *Rabiolo v. Weinstein,* 357 F.2d 167, 168 (7th Cir. 1966)). "A jurisdictional defect of this sort is fatal to maintenance of an action." *Id.* (citing *Bland v. Britt,* 271 F.2d 193 (4th Cir. 1959)). When service is improper, courts routinely dismiss the action. *Id.* (citations omitted). Accordingly, due to the insufficiency of the service of process, this Court lacks personal jurisdiction over Owoc's official capacity claims. *See Holmstrom v. United States*, No. 8:02-CV-2006-T-17MAP, 2003 WL 21254624, at *2–3 (M.D. Fla. Apr. 4, 2003) (dismissing action against for lack of jurisdiction due to insufficient service of process on the U.S. Attorney for the Middle District of Florida).

Accordingly, Owoc's official-capacity claims against Judge Russin must be dismissed.

### D.  This Court lacks authority to remove Judge Russin from office.

Finally, Owoc asks this Court to remove Judge Russin from his position as U.S. Bankruptcy Judge. [*See* Am. Compl., ECF No. 12 at 16]. This Court simply cannot do that; it has no power to do so under any set of facts. Title 28, United States Code, Section 152, governs the appointment and removal of bankruptcy judges and provides, in relevant part, as follows:

> A bankruptcy judge may be removed during the term for which such bankruptcy judge is appointed, only for incompetence, misconduct, neglect of duty, or physical or mental disability and *only by the judicial council of the circuit in which the judge's official duty station is located.* Removal may not occur unless a majority of all of the judges of such council concur in the order of removal. Before any order of removal may be entered, a full specification of charges shall be furnished to such bankruptcy judge who shall be accorded an opportunity to be heard on such charges.

28 U.S.C. § 152(e) (emphasis added). Thus, any complaint seeking removal of a bankruptcy judge must be filed with the Eleventh Circuit Court of Appeals.

In sum, all claims for misconduct allegedly committed by Judge Russin during Owoc's bankruptcy proceedings are DISMISSED WITH PREJUDICE.

### V.    CONCLUSION

In view of the foregoing, and upon due consideration, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion [**ECF No. 16**] is **GRANTED**.

2. This case is **DISMISSED WITH PREJUDICE**.

3. Pending motions, if any, are DENIED AS MOOT.

4. The Clerk is directed to CLOSE this case.

**DONE AND ORDERED** in the Southern District of Florida on July 21, 2025.

DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc: counsel of record
John Owoc, *pro se*
3052 N. Atlantic Blvd.
Fort Lauderdale, Florida 33308